UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COLLECTIVE STUDIO DESIGN LLC and RAG STUDIO LLC,
Plaintiffs,

-v-

SALOMON MURCIANO, TIMOTHY FULLUM, SVES, LLC, SVES GO, LLC, SVES APPAREL LLC, SVGO LLC, SVES CP LLC, SVAE, LLC, ESGO LLC, SV APPAREL LLC, and ES BUSINESS CONSULTING LLC,
Defendants.

26-CV-510 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiffs Collective Studio Design LLC ("Collective") and Rag Studio LLC ("Rag") bring this action against Salomon Murciano, Timothy Fullum (together, "Individual Defendants"); SVES, LLC, SVES GO LLC (together, "RICO Defendants"); SVES Apparel LLC, SVGO LLC, SVES CP LLC, SVAE, LLC, ESGO LLC, SV Apparel LLC, and ES Business Consulting LLC (together with RICO Defendants, "SVES") (collectively, "Defendants"), alleging that the RICO Defendants violated various federal criminal statutes, that Individual Defendants breached a guaranty, and that all Defendants breached their contract to pay Plaintiffs for goods sold and delivered. Plaintiffs also assert claims for account stated, goods sold and delivered, and *quantum meruit*.

Before the Court is Defendants' motion to dismiss, as well as Plaintiffs' cross-motion for summary judgment. For the reasons that follow, the motion to dismiss is granted in part with respect to Plaintiffs' RICO claims, the cross-motion for summary judgment is denied as moot, and the case is remanded to New York Supreme Court.

## I. Background

The following facts are drawn from Plaintiffs' complaint. (ECF No. 1-1 ("Compl.").) Plaintiffs are limited liability companies based in New York City at the same address who design, import, and distribute denim and related sportswear. (*Id.* ¶¶ 6-7, 26.) Defendant Murciano, who resides in New York and Florida, and Defendant Fullum, who resides in New York and Massachusetts, broker and arrange manufacturing for distribution to discount retailers. (*Id.* ¶¶ 8-9, 27.) The Individual Defendants conduct their business through the remaining defendants, which are Florida limited liability companies with offices at the same address in New York City and are owned 40% in part by Defendant Murciano and 60% in part by Defendant Fullum. (*Id.* ¶¶ 10-18, 27.)

There are three disputes at issue. First, in 2024, SVES LLC entered into an agreement with The Gap, Inc. to manufacture garments from excess fabric for distribution to discount retailers, and SVES GO accordingly issued dozens of purchase orders to Collective. (*Id.* ¶¶ 30-31.) The Individual Defendants guaranteed the obligations of SVES LLC to Collective in connection with this agreement by a Guaranty dated February 21, 2024, which also includes any attorney's fees related to efforts enforce the guaranty. (*Id.* ¶¶ 32-34). The sum total of these purchase orders is $16,018,359.96, of which the RICO Defendants have collectively wired only a net total of $9,873,537 as of the filing of the complaint, leaving $6,144,823 unpaid to Collective despite Collective's demand. (*Id.* ¶¶ 45-47.)

Second, in 2023, Gabriel Zeitouni, the principal behind both Plaintiffs (*id.* ¶ 26), entered into an agreement with the Individual Defendants to license, manufacture, and sell apparel to discounted retailers under two specific trademarks, and the parties agreed to split all profits from this agreement one-third each (*id.* ¶¶ 36-38). During 2023 and January 2024, Rag sold certain goods for SVES to sell to Ross Stores (a discount retailer), pursuant to a separate agreement

from the main arrangement wherein the parties had agreed to an even one-third split. (*Id.* ¶¶ 48-49.) Rag issued invoices to SVES LLC for $618,300 for all the goods it timely delivered and that were accepted (both to SVES LLC by Rag and to Ross Studios by SVES LLC), but SVES LLC has collectively only paid a total of $241,000 for these goods, leaving $377,300 unpaid that it has failed to return to Rag despite Rag's demand. (*Id.* ¶¶ 50-54.)

Third, in 2023, Rag and the Individual Defendants entered into another even one-third split arrangement regarding other brands. (*Id.* ¶¶ 39-41.) The gross profits and commissions yielded a total of $756,765 to be split evenly between the Individual Defendants and Rag. (*Id.* ¶ 55.) The Individual Defendants were overpaid by $14,779 and have refused return of this overpayment to Rag despite Rag's demand. (*Id.* ¶¶ 56-59.)

Plaintiffs allege the following acts with respect to their RICO claims. In July 2024, a California state court entered a writ of attachment in favor of The Gap, Inc. against SVES GO in the amount of $23,122,199.62 (the "Attachment"), freezing some of their receivables. (*Id.* ¶¶ 60-62.) *See The Gap, Inc. v. SVES GO, LLC, et al.*, Index No. CGC-24-615167 (S.F. Cnty Super. Ct.). Burlington Stores, Inc. and Burlington Merchandising Corporation (together, "Burlington" or "Burlington Defendants"), which constitute a discount retailer that has since been dismissed from this action, then issued a new vendor number to SVES LLC, SVES GO's alleged alter ago, and revised its purchase orders to reflect the purchases as from SVES LLC rather than from SVES GO. (Compl. ¶ 63.) Plaintiffs allege that the Individual Defendants and SVES LLC have received payments by Burlington for goods sold by Plaintiffs to Defendants, and SVES LLC has both avoided the Attachment and paying Plaintiffs. (*Id.* ¶¶ 64-65.)

Plaintiffs initially commenced this action by filing a complaint against Defendants[1] in the Supreme Court of the State of New York, County of New York (Index No. 659823/2025) on November 18, 2025 (the "State Court Action"). (Compl.) Plaintiffs raise breach of contract claims, as well as account stated, goods sold and delivered, *quantum meruit*, breach of guaranty, and alter ego/veil-piercing claims. (*Id.* ¶¶ 69-152.) They also raise claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, against the RICO Defendants and since-dismissed Burlington Defendants, based on underlying alleged violations of federal criminal statutes, including mail fraud, wire fraud, obstruction of justice, and money laundering. (*Id.* ¶¶ 153-165.)

Defendants filed a motion to dismiss in New York state court on January 9, 2026 (ECF No. 41-1) and removed this case to federal court on January 20, 2026 (ECF No. 1). Defendants docketed their motion to dismiss in this action on June 15, 2026. (*See* ECF No. 41.) Plaintiffs filed a cross-motion for summary judgment (ECF No. 23), accompanied by a memorandum of law (ECF No. 24 ("MSJ")), in which Plaintiffs oppose the motion to dismiss, seek summary judgment on Collective's breach of guaranty claim, and seek Rule 11 sanctions for Individual Defendants' affirmations that they never executed a guaranty.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the

[1] The parties have since stipulated to voluntary dismissal of Plaintiffs' claims against the Burlington Defendants. (*See* ECF Nos. 10, 12.)

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must accept as true all well-pleaded factual allegations in the complaint and "draw[] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006) (citations omitted). While a complaint "does not need detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (cleaned up).

## III. Discussion

The Court has "an obligation to scrutinize civil RICO claims early in the litigation[]to separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud." *Rosenson v. Mordowitz*, No. 11-CV-6145, 2012 WL 3631308, at *5 (S.D.N.Y. Aug. 23, 2012). After all, as "[m]any courts have noted," "the allure of treble damages, attorney's fees, and federal jurisdiction presents a powerful incentive for plaintiffs to attempt to fit 'garden variety fraud' claims within the standard of civil RICO." *Id.* at *4 (collecting cases). Accordingly, while "[t]he true civil RICO plaintiff may well provide a laudatory societal service," *id.*, "courts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb," *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 397 (S.D.N.Y. 2000) (quotation marks omitted).

### A. RICO Claims

To state a plausible civil claim under RICO, 18 U.S.C. § 1962(c), a plaintiff must allege "(1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly invests in, or maintains [an] interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 123-24 (2d Cir. 2018) (quotation marks omitted).

To establish that a racketeering activity constitutes a "pattern," a RICO plaintiff must show that the "predicates themselves amount to, or that they otherwise constitute a threat of *continuing* racketeering activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989). This requisite continuity may consist of a "closed period of repeated conduct" (closed-ended continuity) or "past conduct that by its nature projects into the future with a threat of repetition" (open-ended continuity). *Id.* at 241. Plaintiffs do not offer plausible allegations to support either theory. If the alleged continuity is closed-ended, the Second Circuit has held that "predicate acts occurring over less than a two-year period may not be deemed a pattern." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 168 (2d Cir. 2004). Plaintiffs allege only that "[t]hese acts have occurred on multiple occasions over a period of at least one year," which falls short of this standard. (Compl. ¶ 159.) Even assuming the conduct continued through the date of their initial complaint—November 18, 2025—they still have not alleged a sufficiently lengthy period of activity to establish closed-ended continuity. That date is still well less than two years after the California state court issued the Attachment in July 2024, which is the earliest Defendants could have commenced this scheme. (*See* Compl. ¶ 63 (alleging "SVES GO and Burling *immediately* conspired to avoid the Attachment" (emphasis added)).)

On open-ended continuity, Plaintiffs' allegations also fail to pass muster. First, the allegations are conclusory. Plaintiffs allege that "SVES LLC has received and continues to receive substantial payments from Burlington while evading and continuing to evade the Attachment." (Compl. ¶ 65.) But "[a] simple statement that the 'scheme continues to date,' without more, does not suffice." *Pier Connection, Inc. v. Lakhani*, 907 F. Supp. 72, 76 (S.D.N.Y. 1995) (internal citation omitted); *see also Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp. 2d 234, 257 (S.D.N.Y. 2002) (same). Plaintiffs' bare-bones allegation cannot suffice for

purposes of pleading open-ended continuity. They offer no specific allegations that, for instance, there are as-yet unfulfilled purchase orders between Burlington and SVES GO, which Burlington is executing through retroactively editing them to reflect SVES LLC's vendor number. Plaintiffs further allege that "Defendants were able to carry on their substantial business with Burlington and receive payments for the goods sold and delivered by SVES GO to Burlington without any of Burlington's payments to SVES LLC being frozen" (Compl. ¶ 64), but this is still insufficient. Where "[t]he most that can be said for this aspect of the pleading is that it alleges the defendants . . . are continuing to do business," it is "far too conjectural to satisfy the requirements of RICO pleading." *Ochs v. Shearson Lehman Hutton Inc.*, 768 F. Supp. 418, 426 (S.D.N.Y.1991).

Plaintiffs' pleadings lack sufficient allegations to even fulsomely perform the continuity analysis. For instance, courts look in part to the "numerosity" of the predicate acts in evaluating open-ended continuity. *See Boritzer v. Calloway*, No. 10-CV-626, 2013 WL 311013, at *12 (S.D.N.Y. Jan. 24, 2013). But Plaintiffs do not plead, for instance, how many purchase orders were retroactively edited, how many were executed, how often these purchase orders are generally made and filled, or how frequently Burlington has historically made purchase orders from SVES or SVES GO specifically. Their general statement that business continues in evasion of the Attachment does not provide a specific indication of "a threat of continuing criminal activity." *Id.*

Second, "[i]t is well-established that . . . an inherently terminable scheme cannot establish open-ended continuity for RICO purposes." *Albunio v. Int'l Safety Grp., Inc.*, No. 15-CV-152, 2016 WL 1267795, at *6 (S.D.N.Y. Mar. 30, 2016) (quotation marks omitted) (collecting cases); *accord Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999)

("[A]n 'inherently terminable' scheme," i.e., one that has (or must) "come to its conclusion," "does not imply a threat of continued racketeering activity."). Here, at some point Burlington's purchase orders with SVES GO will be completed, if that point has not already passed. Burlington could instead issue new purchase orders to any of the other SVES entities without perpetrating this particular scheme, as Plaintiffs' pleadings suggest that only SVES GO was subject to the Attachment. (Compl. ¶ 62.) *Cf. GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 466 (2d Cir. 1995) (finding no open-ended continuity where "the predicate acts alleged in connection with the repurchases of residual investor interests . . . *could not* have continued once the pool of investor interests available for repurchase was exhausted"). All purchase orders between SVES GO and Burlington predating the Attachment, and thus potentially subject to the alleged scheme, will be or already have been exhausted. Plaintiffs offer no allegations to suggest that Burlington will continue to enter purchase orders with SVES GO specifically; if anything, their allegations imply that Burlington's purchase orders will go through SVES LLC going forward to avoid being subject to the Attachment pertaining to SVES GO. "It defies logic to suggest that a threat of continued [predicate] activity exists when," eventually, there will be (or already is) "nothing left" to do regarding fulfillment of and payment for these SVES GO purchase orders. *Id.* Such an "inherently terminable" scheme is "not sufficient to suggest a threat of continuity." *Id.*

Third, Plaintiffs do not allege underlying predicate acts that are so "inherently unlawful" that they would "generate the requisite threat of continuity." *Nightingale Grp., LLC v. CW Cap. Mgmt., LLC*, No. 11-CV-9293, 2012 WL 2674539, at *8 (S.D.N.Y. July 5, 2012). "The Second Circuit has observed that inherently unlawful acts, such as murder, committed in pursuit of inherently unlawful goals, such as narcotics trafficking, are generally found to generate the

requisite threat of continuity even if the time period is short, while racketeering activities furthering endeavors that are not inherently unlawful, such as frauds in the sale of property, are generally found wanting despite even longer periods of time." *Purchase Real Est. Grp. Inc. v. Jones*, No. 05-CV-10859, 2010 WL 1837809, at *11 (S.D.N.Y. Apr. 30, 2010) (citing *United States v. Aulicino*, 44 F.3d 1102, 1111-12 (2d Cir. 1995)). As it appears undisputed that the Burlington and the RICO Defendants "primarily conduct legitimate business"—wholesale and retail selling of goods—"[t]he question then becomes whether [Plaintiffs] ha[ve] adequately alleged that either (1) the unlawful predicate acts alleged in the Complaint are the regular way in which the Defendants conduct business or (2) the nature of the predicate acts imply a threat of continued criminal activity." *Nightingale Grp.*, 2012 WL 2674539, at *8. Plaintiffs have not done so.

First, Plaintiffs do not plausibly allege that the RICO Defendants regularly instruct their purchasers, such as Burlington, to retroactively edit purchase orders and issue new vendor numbers to circumvent court orders such as the Attachment. While they plead that "[t]he purpose of the Enterprise was to conduct ongoing business activities while fraudulently avoiding payment of debts and judgments and evading lawful court orders" (Compl. ¶ 157), they allege that the purported enterprise was formed only after the Attachment at issue here and make no reference to any other debts, judgments, or court orders the enterprise evades—let alone regularly.

Second, the predicate acts Plaintiffs allege do not imply a "threat of continu[ed]" criminal activity because of their "inherently unlawful" nature. *Nightingale Grp.*, 2012 WL 2674539, at *8. While Plaintiffs allege obstruction of justice as one of the underlying predicate acts (Compl. ¶ 158) and the Second Circuit has acknowledged that obstruction of justice is an inherently

unlawful activity, *see Aulicino*, 44 F.3d at 1111, Plaintiffs do not adequately plead obstruction of justice because their allegations relate only to the California state court action that resulted in the Attachment at issue. The Second Circuit has been clear that "[t]o constitute an offense under [the obstruction of justice] statute, the act must relate to a proceeding in a *federal* court of the United States." *O'Malley v. N.Y.C. Transit Auth.*, 896 F.2d 704, 707 (2d Cir. 1990). Where, as here, Plaintiffs only "allege that the Defendants committed obstruction of justice in the course of a state court proceeding," they may not "predicate [their] civil RICO claim" on those allegations. *Sheridan v. Mariuz*, No. 07-CV-3313, 2009 WL 920431, at *9 (S.D.N.Y. Apr. 6, 2009). ("[A]llegations of obstruction of justice must occur during the course of a federal proceeding in order to be cognizable in a federal civil RICO cause of action.").

Plaintiffs also plead mail fraud, wire fraud, and money laundering as alleged underlying predicate acts. (Compl. ¶ 158.) While money laundering may be a predicate act "in pursuit of inherently unlawful goals" such that it establishes open-ended continuity, *see, e.g.*, *World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 516 (S.D.N.Y. 2007),[2] *aff'd on other grounds*, 328 F. App'x 695 (2d Cir. 2009), a more threshold question governs here. The Second Circuit has held that RICO liability is limited to acts that are a "substantial factor in the sequence of responsible causation" and cause "reasonably foreseeable" injuries." *Ideal Steel Supply Corp. v. Anza,* 373 F.3d 251, 257 (2d Cir. 2004) (quotation marks omitted). "As such, the plaintiff must show that he is the target, competitor or intended victim of the racketeering

[2] The Court in *World Wrestling Ent., Inc.* cites *Unites States v. Coiro*, 922 F.2d 1008 (2d Cir. 1991), for this proposition. However, the *Coiro* court held only that the "trial evidence of [defendant's] numerous activities involving bribery and money laundering" established "the requisite relatedness and continuity" under civil RICO. *Id.* at 1017. It did not specifically hold that money laundering is an inherently unlawful act such that it necessarily establishes open-ended continuity.

enterprise. Incidental or derivative injuries to the plaintiff are insufficient to establish proximate cause." *Chandradat v. Navillus Tile*, No. 03-CV-10093, 2004 WL 2186562, at *4 (S.D.N.Y. Sep. 28, 2004) (first citing *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 124 (2d Cir. 2003); then citing *Laborers Loc. 17 Health and Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 239-40 (2d Cir. 1999)).

Plaintiffs cannot base their civil RICO claims on these alleged predicate acts because, even assuming they plausibly plead the elements of each, they have "not demonstrated that [their] alleged injury—the denial of [payment]—was proximately caused by defendants' alleged wire fraud, mail fraud, or money laundering." *Id.* Plaintiffs' allegations closely track those in *Chandradat*. There, the plaintiff alleged that "defendants altered invoices to customers and diverted the funds," *id.*, and here, Plaintiffs allege that RICO and Burlington Defendants engaged in an enterprise to alter purchase orders and divert the funds to SVES LLC instead of SVES GO. But, as in *Chandradat*, Plaintiffs do not allege "that defendants owed a duty to [*them*] in refraining from these unlawful acts," nor that their "injuries"—failure to receive payment from RICO Defendants—"were 'the preconceived purpose' or 'the specifically intended consequence of the RICO defendants' acts.'" *Id.* (quoting *In re Am. Exp. Co. Shareholder Litig.,* 39 F.3d 395, 400 (2d Cir. 1994)). Plaintiffs offer no allegations plausibly suggesting that the RICO Defendants engaged in the alleged racketeering activity specifically to avoid payment to them for goods delivered and sold. If anything, their allegations suggest that the RICO Defendants undertook this scheme in order to continue receiving payment for these goods such that they could operate their business normally, including through contracting with (and paying) counterparties such as Plaintiffs. Put differently, the scheme Plaintiffs allege would enable the RICO Defendants to have the cash reserves to pay them; the RICO Defendants' decision not to

do so is entirely separate from this scheme. Accordingly, Plaintiffs' injury was "not reasonably foreseeable as a natural consequence of the RICO violations." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 24 (2d Cir. 1990). Plaintiffs thus fail to state a civil RICO claim.[3]

**B. Supplemental Jurisdiction**

Federal jurisdiction rested solely on Plaintiffs' RICO claims, as Plaintiffs' remaining causes of action all arise under New York common law (Compl. ¶¶ 69-152) and the parties lack complete diversity (*id.* ¶¶ 6-9). Now that the RICO claims are dismissed, this Court may decline to exercise supplemental jurisdiction over the remaining claims. *See* 28 U.S.C. § 1367(c)(3).

While courts have discretion as to whether to exercise supplemental jurisdiction, courts should generally decline to exercise jurisdiction over remaining state claims that do not implicate preemption issues where the federal claims are dismissed in the early stages of litigation. *See Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (when "all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims" (quoting *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988))). As this action is in its early stages, this Court declines to exercise jurisdiction over Plaintiffs' remaining claims and remands this matter to New York Supreme Court, New York County.

---

[3] There may be additional reasons to be skeptical of Plaintiffs' allegations of mail fraud and wire fraud, since the Second Circuit examines these predicate acts with "particular[] scrutin[y] because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it."' *See Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014). But given Plaintiffs' failure to establish that their injuries were reasonably foreseeable as a result of the alleged RICO violations, the Court need not engage in this examination.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part, and the twelfth cause of action (alleging RICO violations) is hereby DISMISSED.

The Court declines to retain supplemental jurisdiction over the remaining state-law claims, and the case is hereby REMANDED to New York Supreme Court, New York County. Collective's cross-motion for partial summary judgment is thus denied as moot and without prejudice to renewal in state court, as it pertains only to Plaintiffs' common-law breach of guaranty claim.

The Clerk of Court is directed to close the motion at Docket Number 23.

SO ORDERED.

Dated: October 27, 2026
New York, New York

J. PAUL OETKEN
United States District Judge